IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT R. WOLF,

      Plaintiff,

vs.                                                                                                 No. CIV 23-0382 JB/GJF

NEW MEXICO DEPARTMENT
OF CORRECTIONS; K. RIVERA, Unit
Manager; JOSE SANTIAGO, Captain;
TIMOTHY B. HATCH, Deputy Warden;
SHAWN FARMAN, Disciplinary Officer,
and ROBERT NILIUS, Warden,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Complaint for Violation of Civil Rights (Prisoner Complaint), filed November 28, 2023 (Doc. 13)("Amended Complaint"). Plaintiff Robert R. Wolf is incarcerated, pro se, and proceeding in forma pauperis. See Order Granting *In Forma Pauperis* Application, filed September 25, 2023 (Doc. 5)("IFP Order")(emphasis in IFP Order). The Amended Complaint challenges, among other things, Wolf's conditions of confinement in prison. Having conducted an initial review of the Amended Complaint under 28 U.S.C. § 1915(e) and rule 12(b)(6) of the Federal Rules of Civil Procedure, and considering applicable law, the Court dismisses the Amended Complaint but grants leave to file another amendment.

## FACTUAL AND PROCEDURAL BACKGROUND

Wolf is a State inmate at the Central New Mexico Correctional Facility ("Central Correctional") in Los Lunas, New Mexico. See Amended Complaint at 3. Wolf filed the Amended Complaint on November 28, 2023, to address how the "administration and staff treats

the geriatrics" in prison.  Amended Complaint at 6.  According to Wolf, the "youngsters" are "taking over" at Central Correctional.  See Amended Complaint at 6.  Many young inmates allegedly participate in fights and use drugs in broad daylight, despite the existence of security cameras.  See Amended Complaint at 6.  The Central Correctional correctional officers allegedly ignore these issues "unless there[] [is] blood[,] someone can't get out of bed, or th[ey are] cut up."  See Amended Complaint at 6.  Wolf contends that he often is afraid to go outside "because of the drugs and punks."  Amended Complaint at 6.  He believes the issues are attributable to the fact that "to[o] many women [are] running the prisons."  Amended Complaint at 6.

Wolf further contends that Central Correctional provides inadequate food, medical care, and housing amenities.  See Amended Complaint at 6-9.  The Amended Complaint generally alleges that the food at Central Correctional is not fit for human consumption; prison officials deprive inmates of exercise; and Central Correctional revokes unspecified privileges from geriatric inmates.  See Amended Complaint at 7-9.  Central Correctional also allegedly places bunk beds in the geriatric unit.  See Amended Complaint at 7.  Wolf contends that, in at least one instance, a lieutenant permitted an inmate in his twenties to move to a bottom bunk before a sixty-two-year-old inmate with back/feet issues.  See Amended Complaint at 8.  Wolf further contends that Central Correctional removed the benches from the showers and replaced them with geriatric chairs, which easily capsize.  See Amended Complaint at 8-9.  Wolf has several medical conditions, including spinal stenosis, back pain, a hip replacement, and high blood pressure.  See Amended Complaint at 9.  It is not clear whether, or to what extent, prison officials have failed to treat those conditions; Wolf alleges that he has had several MRI scans and that prison officials

"said they did not know when [Wolf would] go see the doc[tor] about [his] back."  Amended Complaint ¶ V, at 9.

Based on these facts, the Amended Complaint raises claims for discrimination and cruel-and-unusual punishment under 42 U.S.C. § 1983.  See Amended Complaint ¶¶ II(B), at 5; id. at 6; id. ¶ VI, at 9.  The Amended Complaint also raises a claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq. ("ADA").  See Amended Complaint ¶ VI, at 9.  Wolf seeks unspecified damages along with an Order directing CNMCF officials to restore many privileges for geriatric inmates and to control the drug use among younger inmates.  See Amended Complaint ¶ VI, at 9.  The Amended Complaint names five Defendants: (i) the New Mexico Corrections Department ("NMCD"); (ii) Warden Nilius; (iii) Deputy Warden Timothy Hatch; (iv) Unit Manager K. Rivera; (v) Captain Jose Santigo; and (vi) Disciplinary Officer Shawn Farman.  See Amended Complaint at 3-5.  Wolf obtained leave to proceed in forma pauperis ("IFP") and paid his partial filing fees.  See IFP Order at 1.  The Amended Complaint therefore is ready for initial review under 28 U.S.C. § 1915(e).

## **LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS**

Section 1915(e) of Title 28 of the United States Code requires the court to conduct a sua sponte review of all civil complaints where the plaintiff is proceeding IFP.  See 28 U.S.C. § 1915(e).  The court must dismiss any IFP complaint that is frivolous, malicious, or fails to state a claim on which relief may be granted for purposes of rule 12(b)(6) of the Federal Rules of Civil Procedure.  See 28 U.S.C. § 1915(e).  Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v.

McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that,

if assumed to be true, state a claim to relief that is plausible on its face."  Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." . . . . The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, a pro se prisoner's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d at 1110.  If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  At the same

time, however, pro parties must file a legible pleading that complies with rule 8. That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). "It is not the role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action." McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir. 2014)(unpublished). See Pola v. Utah, 458 F. App'x 760, 761 (10th Cir. 2012)(unpublished)(affirming dismissal of complaint that "included everything but the kitchen sink"). Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" various documents "to ascertain which . . . pertinent allegations to which a response is warranted." McNamara v. Brauchler, 570 F. App'x at 743.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 creates only the right of action, and it does not create any substantive rights; substantive rights must come from the Constitution of the United States or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights.'" (quoting Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186, 1197 (10th Cir.

1998))))(alteration in Nelson v. Geringer, but not in Ellis v. Univ. of Kansas Med. Ctr.).  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a valid claim under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court of the United States clarifies that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Consequently, there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 675; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory

defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS 2011, WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution[]"

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft v. Iqbal does not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d

at 1200.  More specifically, the Tenth Circuit recognizes that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200-01.

The specific example that the Tenth Circuit uses to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit notes that the Supreme Court in that case concluded that there is a sufficient link between the police misconduct and the city officials' conduct, because some of the named defendants had a deliberate plan to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

### LAW REGARDING THE RIGHT TO ADEQUATE MEDICAL CARE AND HUMANE CONDITIONS OF CONFINEMENT

The Eighth Amendment to the Constitution protects against the infliction of cruel-and-unusual punishments. See U.S. Const. Amend. VIII.  In 1994, the Supreme Court o held that the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  This duty includes adequate food, clothing, shelter, and medical care, but also a more general requirement to "'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  The Eighth Amendment's protections also include a prohibition against prison officials' deliberate indifference.  See Howard v. Waide, 534

F.3d 1227, 1235 (10th Cir. 2008)(citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)).

Determining the sufficiency of an Eighth Amendment claim for deliberate indifference involves a two-pronged inquiry, comprised of an objective component and a subjective component. See Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006). With respect to the objective component, conditions are objectively serious when they threaten the inmate's safety or "lead to deprivations of essential food, medical care, … [or] sanitation." Rhodes v. Chapman, 452 U.S. 337, 348 (1981). "[T]he length of exposure to the conditions is often of prime importance" in Eighth Amendment cases. Despain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001). "As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases." Despain v. Uphoff, 264 F.3d at 974. As to medical care, "'[a] medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Clark v. Colbert, 895 F.3d at 1267 (quoting Self v. Crum, 439 F.3d 1227, 1230-33 (10th Cir. 2006)).

Under the subjective component, the defendant must have a "'sufficiently culpable state of mind.'" Farmer v. Brennan, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). The plaintiff must establish that the defendant "knew" the plaintiff "faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting Farmer v. Brennan, 511 U.S. at 847). Prison officials who know of a substantial risk to inmate health or safety may be found free from liability, however, if they respond reasonably to the risk, even if the harm ultimately is not averted.

See Howard v. Waide, 534 F.3d at 1239 (quoting Farmer v. Brennan, 511 U.S. at 844-45). The United States Supreme Court has found that negligence does not constitute a wrong under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. at 105-06.

## LAW REGARDING EQUAL PROTECTION CLAIMS

The Equal Protection Clause of the Fourteenth Amendment to the Constitution guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" Soskin v. Reinertson, 353 F.3d at 1247 (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). "The Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.'" Teigen v. Renfrow, 511 F.3d at 1083 (quoting Vacco v. Quill, 521 U.S. 793, 799 (1997)).

Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals whom is being treated differently from similarly situated individuals who are not in that class. See SECSYS, LLC v. Vigil, 666 F.3d 678, 688 (10th Cir. 2012). The plaintiff must demonstrate that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of the law's differential treatment of a particular class of persons." SECSYS, LLC v. Vigil, 666 F.3d at 685. Said differently, "a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an intended consequence of state action." SECSYS, LLC v.

Vigil, 666 F.3d at 685.

A State actor generally can be subject to liability only for its own conduct under 42 U.S.C. § 1983. See Robbins v. Oklahoma, 519 F.3d at 1251 (citing DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). At least in the Tenth Circuit, however, under some circumstances, a third-party's harassment can subject a supervisor or municipality to liability for violation of the equal-protection clause -- not for the harasser's conduct, per se, but for failure to take adequate steps to stop it. See Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1249-51 (10th Cir. 1999). The plaintiff "must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." Murrell v. Sch. Dist. No. 1, 186 F.3d at 1249 (citations omitted). The failure to prevent discrimination before it occurs, however, is not actionable. Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.7.

## LAW REGARDING ADA CLAIMS

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates in State prisons. See Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998). To state a claim under Title II of the ADA, a "plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." Hockaday v.

Colorado Dep't of Corr., 766 F. App'x 572, 574-75 (10th Cir. 2019)(unpublished).

"Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." J.V. v. Albuquerque Pub. Schs., 813 F.3d 1289, 1295 (10th Cir. 2016). "'Intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1228-29 (10th Cir. 2009)). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). "The failure to act must be more than negligent and involve an element of deliberateness." J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1298 (citing Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1228).

"To prove a case of disparate impact discrimination, the plaintiff must show that a specific policy caused a significant disparate effect on a protected group." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George, 685 F.3d 917, 922 (10th Cir. 2012)(citing Reinhart v. Lincoln Cnty., 482 F.3d 1225, 1229 (10th Cir. 2007)). Disparate impact discrimination "is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George, 685 F.3d at 922 (citing Mountain Side Mobile Ests. P'ship v. Sec'y of Hous. & Urban Dev., 56 F.3d 1252 (10th Cir.1995)).

"ADA regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1299 (quoting 28 C.F.R. § 35.130(b)(7)). Thus, to prevail on a reasonable accommodations claim, a plaintiff must show that he or she requested an accommodation, or that the need for an accommodation was obvious, but the defendant failed to provide one. See J.V. v. Albuquerque Pub. Schs., 813 F.3d at 1299.

## ANALYSIS

Construed liberally, the Amended Complaint alleges prison officials provided inhumane conditions of confinement and insufficient medical care in violation of the Eighth Amendment. See Amended Complaint at 6-9. The Amended Complaint further alleges that prison officials discriminated against Wolf in violation of the Equal Protection Clause and of the ADA. The Court will analyze the Constitutional claims under 42 U.S.C. § 1983 before turning to the ADA.

**I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER § 1983.**

Wolf asserts his Constitutional claims pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." Brown v. Buhman, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). As noted above, "[a] cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." McLaughlin v. Bd. of Trustees, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, personally has violated the Constitution. See Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 1998). There also must be a connection between the official conduct and the constitutional violation. See

Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). "Collective allegations" regarding the violation of Constitutional rights will not satisfy this standard. Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008). The complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him." Robbins v. Oklahoma, 519 F.3d at 1249-50.

Applying these standards, the Amended Complaint does state a cognizable § 1983 claim against any Defendant. The Amended Complaint sets forth a list of Defendants and describes what Wolf experienced at Central Correctional, but it does not tie each Defendant to the alleged wrongdoing. See Amended Complaint at 6-9. At most, the Amended Complaint alleges Rivera had the geriatric chairs removed from the showers, but goes on to clarify that "they" replaced the chairs with inadequate benches. See Amended Complaint ¶ D, at 9. "When various officials have taken different actions with respect to a plaintiff, the plaintiff's . . . passive-voice [allegations] showing that his rights 'were violated' will not suffice." Pahls v. Thomas, 718 F.3d 1210, 1225-26 (10th Cir. 2013). "Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." Pahls v. Thomas, 718 F.3d at 1226. Accordingly, the Court dismissed Wolf's § 1983 claims.

Alternatively, even if Wolf tied each Defendant to the alleged wrongdoing, the allegations do not demonstrate a Constitutional violation. As to the Eighth Amendment claims, the Amended Complaint lacks sufficient detail to show prison officials deprived Wolf "of essential food, medical care, . . . [or] sanitation." Rhodes v. Chapman, 452 U.S. at 348. Wolf generally alleges the food is not fit for human consumption, but he gives no details regarding the alleged defects in the food

or whether he is receiving adequate nutrition. There are also no facts showing the bunk bed or shower chairs caused Wolf harm or that prison officials failed to treat any objectively serious medical condition. As to the subjective prong of the deliberate indifference test, Amended Complaint fails to show any individual Defendant "knew [Wolf] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." Kikumura v. Osagie, 461 F.3d 1269, 1293 (10th Cir. 2006). The Amended Complaint therefore does not demonstrate an Eighth Amendment violation.

Wolf also alleges prison officials discriminate against geriatric inmates in violation of the Equal Protection Clause. The Amended Complaint alleges Central Correctional is overrun by disruptive "youngsters" who use drugs; that unspecified privileges were revoked from geriatric inmates; that the shower benches were replaced with geriatric chairs; and that in one instance, a lieutenant provided a lower bunk bed to a twenty-something year old inmate rather than a sixty-two-year-old inmate. These facts are too conclusory to demonstrate prison officials have acted with the intent to discriminate against geriatric inmates. See SECSYS, LLC v. Vigil, 666 F.3d at 685 (concluding that a complaint cannot demonstrate an Equal Protection violation unless "a discriminatory effect . . . is an intended consequence of state action"). Accordingly, the Amended Complaint does not demonstrate an Equal Protection violation.

## II.     THE AMENDED COMPLAINT DOES NOT STATE AN ADA CLAIM.

As noted above, to state a claim under the ADA's Title II, Wolf "must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of

benefits, or discrimination was by reason of a disability." Robertson v. Las Animas Cnty. Sheriff's Dept., 500 F.3d 1185, 1193 (10th Cir. 2007). As an initial matter, it is not clear how Wolf is disabled for the ADA's purposes. The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The federal regulations governing the ADA state that advanced age, standing alone, is not a recognized disability. See 29 C.F.R. Pt. 1630, App. § 1630.2(h) (2009)("Advanced age, in and of itself, is not an impairment [for the ADA's purposes]."); Natarelli v. New York State Off. of Vocational & Educ. Servs. for Individuals With Disabilities, 2009 WL 5204179, at *4 (N.D.N.Y. Dec. 21, 2009)(Suddaby, J.)(same); Zatarain v. WDSU-Television, Inc., 881 F. Supp. 240, 243 (E.D. La. 1995)(Vance, J.), aff'd, 79 F.3d 1143 (5th Cir. 1996)("For the purposes of the ADA, 'advanced age' is not in and of itself an impairment"); Lee v. Se. Pa. Transp. Auth., 418 F.Supp.2d 675, 679 (E. D. Pa. 2005)(Mclaughlin, J.)("Age alone, however, is not a disability for purposes of the ADA.").

Assuming Wolf's spinal stenosis, hip replacement, high blood pressure, and back pain disables him, he has not alleged facts showing he was denied any benefit because of these disabilities. See Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir.1999)(stating that a plaintiff can show an ADA violation based on the denial of benefits or discrimination). As noted above, there also is no evidence of intentional discrimination. See J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1295 (10th Cir. 2016)(noting that discrimination includes intentional discrimination, disparate impact, and failure to make a reasonable accommodation). Wolf cannot prevail on a

reasonable-accommodation claim under the current facts, as he does not allege that he requested an accommodation or that the need for accommodation was obvious.  See J.V. v. Albuquerque Pub. Sch., 813 F.3d at 1299.  Moreover, the Amended Complaint does not demonstrate any specific policy had a disparate impact on Wolf because of his disability.  J.V. v. Albuquerque Pub. Sch., 813 F.3d at 1299 ("To prove a case of disparate impact discrimination, the plaintiff must show that a specific policy caused a significant disparate effect").  For example, there are no facts explaining how the use of bunk beds, the use of geriatric shower chairs, or the restriction of exercise privileges impacted Wolf or that such impact was because of Wolf's disability.  The Amended Complaint therefore does not plead a cognizable ADA claim.  The Court dismiss the Amended Complaint for failure to state a cognizable claim under 28 U.S.C. § 1915(e) and rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.    THE COURT GRANTS LEAVE TO AMEND.

The Tenth Circuit counsels that courts ordinarily should give pro se inmates an opportunity to remedy their pleadings' defects.  See Hall v. Bellmon, 935 F.2d at 1110.  Accordingly, the Court dismisses the Amended Complaint without prejudice and grants leave to file a single amended complaint within thirty days of this Order's entry.  The Court reminds Wolf that any amended complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her."  Robbins v. Oklahoma, 519 F.3d at 1250.  The Court also reminds Wolf that entities and prison supervisors cannot be liable vicariously under 42 U.S.C. § 1983 for their employees' actions.  See Moya v. Garcia, 895 F.3d 1229, 1233 (10th Cir. 2018); Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216

(10th Cir. 2003). To establish liability under § 1983, Wolf must show the entity-defendant or prison supervisor "had an 'official . . . policy of some nature . . . that was the direct cause or moving force behind the constitutional violations." Dubbs v. Head Start, Inc., 336 F.3d at 1216 (applying the rule to entity-defendants). See Moya v. Garcia, 895 F.3d at 1233 (applying the rule to prison supervisors). If Wolf declines to timely file a single amended complaint or files another complaint, that does not comply with rule 12(b)(6) and the pleading standards set forth herein, the Court may dismiss this action with prejudice and without further notice.

**IT IS ORDERED** that: (i) the Plaintiff's Complaint for Violation of Civil Rights (Prisoner Complaint), filed November 28, 2023 (Doc. 13), is dismissed without prejudice; and (ii) the Plaintiff may file a single amended complaint within thirty days of this Order's entry.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Robert R. Wolf
Los Lunas, New Mexico

    *Plaintiff pro se*